Filed 9/12/24  P. v. Rios CA2/7

Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B326828 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA091171) |
| v. | |
| JUAN CARLOS RIOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Andrew C. Kim, Judge.  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

————————

Juan Carlos Rios was convicted by a jury in February 2009 of special-circumstance first degree murder and other crimes committed when he was 23 years old.  Rios was sentenced on the murder count to life without the possibility of parole (LWOP).  Rios appealed, and we affirmed.  (*People v. Rios* (May 18, 2011, B218445) [nonpub. opn.] (*Rios I*).)

 On October 31, 2022 Rios, representing himself, filed a motion seeking to develop a record of his youth-related mitigating factors for an eventual youth offender parole hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) and *In re Cook* (2019) 7 Cal.5th 439 (*Franklin* proceeding).  In his motion, Rios argued Penal Code section 3051, subdivision (h),[1] of the youth offender parole hearing statute violated the equal protection clause of the Fourteenth Amendment by denying the right to a youth offender parole hearing to inmates sentenced to LWOP for crimes committed when they were 18 to 25 years old, while authorizing youth offender parole hearings for similarly situated young adults who were sentenced to an indeterminate term.  The trial court summarily denied the motion on the basis that Rios was statutorily ineligible for a youth offender parole hearing.  We reversed, concluding that section 3051, subdivision (h), violates the equal protection clause because there is no rational basis for excluding 18-to 25-year-old offenders sentenced to LWOP from the benefits of section 3051.

The Supreme Court granted review and transferred the case to us with directions to vacate our decision and reconsider Rios's appeal in light of *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*), holding section 3051, subdivision (h), does not violate

---

[1]     Further statutory references are to the Penal Code.

the equal protection clause of the Fourteenth Amendment.  In a supplemental letter brief the Attorney General argues that based on the Supreme Court's decision in *Hardin*, we should now affirm the trial court's order denying Rios's motion for a *Franklin* proceeding.  Rios has not filed a supplemental brief in response. We now affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Killing*

Early on the morning of June 17, 2005, Alex Gutierrez drove to a house on Clarkdale Avenue in Hawaiian Gardens, where Lizbeth Figueroa and her sister Paola Figueroa lived with their family.[2]  Gutierrez was a friend of Paola's ex-boyfriend. Paola reluctantly agreed to sell stereo speakers for Gutierrez. Lizbeth and Paola drove to a house about five blocks away to try to sell the speakers.  One of Lizbeth's friends, Carlos Gallardo, was there with five or six other men.  Gallardo was a member of the Varrio Hawaiian Gardens gang, and the house was a regular hangout for members of the gang.  Rios, who was a member of the same gang, approached the women and demanded to know who gave Paola the speakers.  Paola replied that it was "just some friends."  Rios asked if they were "gangsters" and whether they had guns, a nice car, and money.  He also inquired whether they looked like "Paisa[s]," meaning Mexican nationals.  Paola told Rios they were Paisas and had no money.  Rios responded he "was planning on jacking them."  Paola later drove Rios,

---

[2]    The summary of facts is taken from our prior opinion in *People v. Rios, supra,* B218445.

3

Gallardo, and Omar Ramirez to Rios's home, which was close to where the Figueroa sisters lived.

At around 3:00 a.m. Gutierrez and David Quesada drove to Lizbeth and Paola's house for Gutierrez to pick up money for what he described as a completed job. Rios, Gallardo, and Ramirez were near the house when they saw Gutierrez's car make a U-turn and come to a stop on the street. Gallardo thought the occupants of the car looked like Paisas. Rios, wearing a hockey mask, approached the driver's side of Gutierrez's car and asked Gutierrez for a cigarette. Gutierrez said he did not have one. Rios whistled, and Gallardo and Ramirez, whose faces were covered, ran to the passenger's side of the car from behind a nearby van. Rios drew a gun and told Gutierrez to park the car and get out. Rios told Quesada in Spanish that nothing would happen to him if he got out of the car. Quesada started to get out of the car.

Rios argued with Gutierrez, who then began to drive away. Rios fired several shots at the car. One of the bullets struck Gutierrez, who lost control of the vehicle. The car hit a van that was parked in front of the Figueroas' house. Gutierrez later died from a gunshot wound to his torso.

B.    *The Jury Conviction and Sentence*

A jury convicted Rios of first degree murder (§ 187, subd. (a)), attempted willful, deliberate and premeditated murder (§§ 187, subd. (a), 664), shooting at an occupied vehicle (§ 246), two counts of attempted carjacking (§§ 215, subd. (a), 664), and two counts of possession of a firearm by a felon (former § 12021, subd. (a)(1).) The jury also found the special circumstance allegation true that the murder was committed while Rios was

4

engaged in the attempted carjacking and to further the activities of a criminal street gang (§ 190.2, subd. (a)(17) & (22)), that he and a principal personally used and discharged a firearm during the commission of the murder, causing great bodily injury (§ 12022.53, subds. (b), (c), (d) & (e)), and that the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). The trial court found true the allegation Rios had one prior serious felony conviction within the meaning of section 667, subdivision (a)(1).

The trial court sentenced Rios to LWOP for first degree murder, a consecutive sentence of 30 years to life for the attempted murder (15 years doubled under the three strikes law), and a concurrent term of four years for possession of a firearm (the middle term of two years doubled). The court also imposed consecutive 25-years-to-life terms for the firearm use enhancements on the murder and attempted murder counts, and five years for the prior serious felony conviction. The court stayed the sentences on the remaining counts and enhancements.

C.    *Rios's* Franklin *Motion*

On October 31, 2022 Rios, representing himself, filed a motion seeking to develop a record for an eventual youth offender parole hearing. In his motion Rios argued he was 23 years old at the time of the offenses and section 3051, subdivision (h), violated the equal protection clause of the Fourteenth Amendment by denying defendants sentenced to LWOP for crimes committed when they were 18 to 25 years old the right to a youth offender parole hearing while authorizing the hearings for similarly situated individuals "who have been sentenced to the functional equivalent to [LWOP]."

5

On November 8, 2022 the trial court summarily denied Rios's request for a *Franklin* proceeding. The court found that Rios was statutorily ineligible for a youth offender parole hearing "because (1) he was sentenced pursuant to sections 1170.12 and 667(b) through (i) for a prior serious 'strike' conviction and (2) he received a life without the possibility of parole sentence for a controlling offense (namely, first degree murder committed while engaged in an attempted carjacking and to further the activities of a criminal street gang), which he committed when he was 23 years old." Rios timely appealed.

## DISCUSSION

### A.  *Youth Offender Parole Hearings*

In 2013, the California Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess.), which added section 3051 and amended sections 3041, 3046, and 4801, effective January 1, 2014. Section 1 of the bill states, "The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in *People v. Caballero* (2012) 55 Cal.4th 262, and the decisions of the United States Supreme Court in *Graham v. Florida* (2010) 560 U.S. 48, and *Miller v. Alabama* (2012) [567 U.S. 460] . . . . It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a

6

meaningful opportunity for release established."[3] (Stats. 2013, ch. 312, § 1; see *In re Williams* (2020) 57 Cal.App.5th 427, 431 ["Youth offender parole hearings under section 3051 were established by the Legislature in 2013, following a series of United States and California Supreme Court cases addressing the constitutionality of lengthy prison sentences for juvenile offenders."].)

Section 3051 initially applied to offenses committed before the offender turned 18 years old and required the Board of Parole Hearings, with limited exceptions, to conduct a youth offender parole hearing no later than a juvenile offender's 25th year of incarceration (and at earlier points depending on the offender's "controlling offense").[4] (See *People v. Ochoa* (2020) 53 Cal.App.5th 841, 848.) Section 4801, subdivision (c), directed the Board of Parole Hearings, when considering parole eligibility

---

[3]     In *Graham v. Florida, supra,* 560 U.S. 48, the United States Supreme Court determined that LWOP sentences for nonhomicide offenses committed by juvenile offenders violated the Eighth Amendment prohibition against cruel and unusual punishment. In *Miller v. Alabama, supra,* 567 U.S. 460, the Supreme Court extended the holding of *Graham* to include juvenile homicide offenders given mandatory LWOP sentences. In *People v. Caballero, supra,* 55 Cal.4th 262, the California Supreme Court held, in the context of a 110-years-to-life sentence imposed on a juvenile for nonhomicide offenses, that parole-eligible sentences for juvenile offenders violated the Eighth Amendment if the parole eligibility date falls beyond the offender's natural life expectancy.

[4]     "Controlling offense" refers to "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).)

7

for youth offenders, to "give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity."

Section 3051 was subsequently amended to apply to offenders who had committed the controlling offense before the age of 23 (Stats. 2015, ch. 471, § 1), and later to offenders who committed the controlling offense when 25 years old or younger (Stats. 2017, ch. 684, § 1.5).  In addition to raising the threshold age to 25, the Legislature extended youth parole hearings in the 25th year of incarceration to juveniles sentenced to LWOP for a controlling offense committed before the age of 18.  (§ 3051, subd. (b)(4), added by Stats. 2017, ch. 684, § 1.5; see *People v. Contreras* (2018) 4 Cal.5th 349, 381.)  Section 3051, subdivision (h), expressly excludes from eligibility for a youth offender parole hearing cases in which the sentence was imposed pursuant to the three strikes law (§§ 667, 1170.12, subds. (b)-(i)), the one strike law (§ 667.61), "or to cases in which an individual was sentenced to life in prison without the possibility of parole." (Stats. 2013, ch. 312, § 4.)

Following the enactment of section 3051, *Franklin, supra*, 63 Cal.4th 261, established a procedure by which an inmate at the time of sentencing may make a record of youth-related mitigating factors in anticipation of a future youth offender parole hearing under section 3051.[5]  The Court in *In re Cook*,

---

[5]     As the *Franklin* court explained, "[S]ection 3051, subdivision (f)(2) provides that '[f]amily members, friends, school personnel, faith leaders, and representatives from community-based organizations with knowledge about the individual before the crime . . . may submit statements for review by the board.' Assembling such statements 'about the individual before the crime' is typically a task more easily done at or near the time of

*supra*, 7 Cal.5th at page 458 held that a juvenile offender with a final judgment could move in a postjudgment proceeding under section 1203.01 to present evidence of youth-related factors.

B.     *Section 3051, Subdivision (h), Does Not Violate Rios's Right to Equal Protection Under* People v. Hardin

Rios contends section 3051, subdivision (h), violates the equal protection clause of the Fourteenth Amendment because there is no rational basis for excluding 18-to 25-year-old offenders sentenced to LWOP from the benefits of section 3051.  The Supreme Court rejected this argument in *Hardin, supra*, 15 Cal.5th at page 864.

In *Hardin*, Tony Hardin was sentenced to LWOP following his conviction of first degree murder with a special circumstance finding for an offense he committed when he was 25 years old. (*Hardin, supra*, 15 Cal.5th at p. 840.)  Hardin asserted section 3051 violated his right to equal protection because "once the Legislature decided to expand [youth offender parole] opportunities to young adults, it could not rationally treat those sentenced to life without parole differently from those convicted

the juvenile's offense rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away.  In addition, section 3051, subdivision (f)(1) provides that any 'psychological evaluations and risk assessment instruments' used by the Board in assessing growth and maturity 'shall take into consideration . . . any subsequent growth and increased maturity of the individual.'  Consideration of 'subsequent growth and increased maturity' implies the availability of information about the offender when he was a juvenile." (*Franklin, supra*, 63 Cal.4th at pp. 283-284.)

of other serious crimes and serving lengthy parole-eligible sentences." (*Hardin*, at p. 846.) The Supreme Court clarified the standard of review for an equal protection claim, explaining, "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*Id.* at pp. 850-851.)

Under rational basis review, applicable here, a court "presume[s] that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.'" (*Hardin*, *supra*, 15 Cal.5th at p. 852.) The court reviewed section 3051's legislative history and observed that "in designing section 3051, the Legislature consciously drew lines that altered the parole component of offenders' sentences based not only on the age of the offender (and thus the offender's amenability to rehabilitation) but also on the offense and sentence imposed. The lines the Legislature drew necessarily reflect a set of legislative judgments about the nature of punishment that is appropriate for the crime." (*Hardin*, at p. 855.) The court acknowledged that it "may be true," as Hardin had argued, that the crime-based categories that affect at what age an offender is eligible for relief may not be rationally related to the purpose of expanding

10

opportunities for early release based on the attributes of youth. (*Ibid.*)  But, the court continued, the Legislature was aware of this point, and "nonetheless crafted a statutory scheme that assigns significance to the nature of underlying offenses and accompanying sentences."  (*Ibid.*)  Therefore, the court reasoned, "[t]he statutory framework indicates that the Legislature aimed to increase opportunities for meaningful release for young adult offenders, while taking into account the appropriate punishment for the underlying crimes, depending on their severity."  (*Ibid.*)

The Supreme Court held Hardin could not establish that "the Legislature's decision to exclude offenders convicted of special circumstance murder from the youth offender parole system" is 'so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection.'"[6]  (*Hardin, supra*, 15 Cal.5th at p. 859.)  The court explained that section 190.2 adequately separates out the most egregious murders (special circumstance murders), which are subject to the most severe punishment—death or LWOP, from other murders (*Hardin*, at p. 859), and therefore, "it is difficult to see how the Legislature that enacted section 3051 could have acted irrationally in singling out special circumstance murder as a particularly culpable offense."  (*Id.* at p. 860.)  Accordingly, Hardin failed to show "that the exclusion of offenders who are serving sentences of life in prison without the possibility of parole for a crime committed after the age of 18 from youth offender parole eligibility is irrational."  (*Id.* at p. 864.)  Similar to the

---

[6]     In *Hardin*, the defendant, like Rios, only raised an equal protection challenge under the equal protection clause of the Fourteenth Amendment of the United States Constitution. (*Hardin, supra*, 15 Cal.5th at p. 847, fn. 2.)

defendant in *Hardin*, Rios has not shown his LWOP sentence for conviction of special circumstance murder violates the equal protection clause.

## DISPOSITION

The order denying Rios's motion for a *Franklin* proceeding is affirmed.


FEUER, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.

12